The next case on our calendar for argument this morning is number 20-1280, Bright-Asante v. Saks & Company. We have Mr. Okole. May it please the court, K.C. Okole appears for the appellant. There you are. Okay, we can see you now, Mr. Okole. We couldn't see you earlier. Yes, I'll spend my time just emphasizing certain facts and I'll then take questions from the court because I believe that the matter is fully briefed. Now, let me begin by submitting that this case is not a summary judgment case and the reason is that there are many issues calling for credibility of the witnesses as well as inconsistencies between this one statement of Lisa Benson on whose testimony this case rests and her deposition statement. Now, these were dealt with in granular detail, that's the conflicts, were dealt with in granular any of those things where the appellant named names as these things were happening. On the day of the purchase, this was a purchase made by somebody who turned out to be fake, not to be the person they presented themselves to be, but this was unknown to the appellant at the time. How do we know that the receipts for both transactions are part of the joint appendix at JA 352 to 354? In both the receipt for the sale done by Mr. Sante and the receipt done by Susan David, the word K after account number, that's the word K before a number following. Mr. Sante testified in his sworn statement, and that was never contradicted by anybody, JA 346 paragraph 37, the K after account but before the figures is indication that the information was keyed into the sales register. Now, let's go back to what started it all. In 2014, it was Lisa Benson, a high managerial employee of SACS, who started it all by saying that the sales conducted by Mr. Sante looked suspicious to her. I will come to deal with whether she had a basis for that suspicion, looked suspicious to her, but the sales done by Susan David to the same customer was not suspicious, and that is the explanation for not forwarding the tape to law enforcement. The only person on the face of the earth that ever saw the tape relating to Susan David was Lisa Benson. Nobody at SACS saw it. Law enforcement did not see it, even though SACS employees were already cooperating with law enforcement. I'm not sure I understand the relevance of that, Mr. Okole, because I thought you were using the treatment of Ms. David as a comparator, talking about SACS having not referred the David case or observations and interactions with Ms. Hennessey to the police, whereas they did refer Mr. Sante. But Lisa Benson was the person who was acting for SACS, and she described differences that she observed, and that explained for non-discriminatory reasons why she referred the one transaction and not the other. She was, in effect, SACS's representative. She was SACS for purposes of the referral, and she gave very reasonable reasons for treating one transaction as suspicious and another not. So I'm not sure that you have made out a showing that she was a reasonable comparator. That is also where I talked about credibility issues. Is she credible? I mean, there are issues about her credibility. This is somebody who submitted a sworn statement in support of summary judgment, which was all over the place and contradicted her sworn depositions testimony. We dealt with this in detail. Maybe you could highlight them for the panel right now. That is correct. For instance, she claimed that my client was the person who Ms. Hennessey came to when she returned the merchandise. This is not true. Mr. Asante made it clear that, first of all, when this happened, when he suspected that there might be something off, he reported it to Asset Protection and Mr. Gonzalez of SACS. Nobody said that is not true. These people are still working they did not deny it. And then when she returned the merchandise, he was on lunch break and was called back by another employee, Mr. Pascal, saying, hey, Ms. Hennessey is back here. He said, call Mr. Gonzalez and alert him to the fact that Ms. Hennessey is here. That is not the because the whole thing is about suspicion. Let's look at the basis for the suspicion. This was somebody who, that's my client, who was the second best salesperson in that store before the time of the arrest. Then that apart, never had any issues at work. Now, when the Secret Service agent asked Ms. Benson how she figured that Asante was involved, this was in an email of August 31, 2014, JA355. Ms. Benson's response was, quote, the way we figured it out with Asante was just by running the zip code for Brownsville, sorry, for Bronxville on exception based reporting, and then looking at high value with credit cards keyed in. That's her explanation. But this same thing applies to Susan David. Also, Mr. Okole, she also described other differences in the behavior. Maybe since your time is limited, you could highlight for us what exactly you rest your claims that discriminatory intent lay behind Sax's actions. Well, it's essentially the fact that from the get go, she did not treat Brett Asante the same way she treated Susan David. May I ask you, counsel, am I right that the one thing that is not common to both these people is that your client is supposed to have given the client access to the Sax computer and in a way that customers are not supposed to have. That is something that did not apply to the other employee, correct? But that is not true. Mr. Asante addressed that in his affidavit that I talked about, when they never controverted, that you don't ask them their ID anymore, that he was standing there and said, key it in. There's a keyboard attached to the register. He said, key in your ID, which he did. After which he called again. They said they saw him call on the phone, but they didn't know who he called. He called to obtain... I'm not suggesting your client didn't try to explain it. I just am trying to make sure I understand correctly that that is not something that your alleged comparator did. I understand you have an explanation for it, but they are different in at least that respect. Isn't it correct? That is correct. But the question is this, the question is this, it is a matter of credibility. Why should we accept what she's saying when they don't have the record that everybody would have seen? You're not disputing that your client did give the client, that your client did give the access to the keyboard. Because the law does not require us to approve of Sachs's decision to take disciplinary action or whatever against your client. We just have to be sure that it wasn't based on an impermissible characteristic like his race. But just, may I say this? Let us know what is the explanation given by Sachs since based on the letter that they wrote him saying you are suspended. This is a suspension without pay indefinitely pending the outcome of your case. When the outcome came out favorably and you reported to them. What's your explanation? Thank you very much. You're past your time. We have your papers and we'll review them carefully. We'll hear from Sachs. Thank you, your honors. May it please the court and good morning, Mr. Ecole. Let me address the issues that were raised first here by Mr. Ecole in the court regarding the distinction between the transaction by Mr. Bredesante and the transaction by Susan David. Lisa Benson did describe several legitimate reasons why she distinguished the two transactions. One was that Ms. David's transaction was conducted on the sales floor, not in the back room. Number two, Ms. David's transaction did not allow the customer access to the register and there is no the customer to use the register to key in the social security number and her email address, changing the email address on the register itself. But am I right that by the time of the transaction with the comparator, this customer had already been identified as a likely fraudster? Yes, anything to refer this transaction that she's back and she's trying to do the same thing again or trying to purchase significant amounts of merchandise? That was certainly a consideration and that is why her transaction with Ms. David was also flagged. It was flagged when Ms. Benson then reviewed the video and observed Ms. David's conduct. Again, she identified several of these things, but not in the back room, not accessing the register. Importantly, not on her cell phone, where Mr. Bredesante acknowledges he was on his cell phone when this transaction was being conducted in the back room by the register and that the evidence that she had so far was that this shoe ring were using their cell phones to communicate information about the numbers that could be used to perpetrate these fraudulent transfers. So the use of the cell phone, which Mr. Bredesante acknowledged was another key distinguishing factor for Ms. Benson to say, this one needs to go to authorities, this one does not. It's materially different. The other point, judges, that I would like to point out is that Mr. Bredesante not only acknowledged allowing her to use or this customer to use the register, he acknowledged that and could not identify one other of his clients and he had explained how he not one of them could he identify ever allowing access to the register. Well, remind me of this fact, was Ms. Kip the same, was Ms. Kip the individual who had the interaction with Ms. David? Yes, Your Honor. Again, that's why her transaction with Ms. David was flagged by initially for review on video. So at that time, did Sachs know that Ms. Kip was suspected of being involved with this ring? It did, Your Honor. Yes, they did. So they saw one of the prime suspects come in and purchase shoes under circumstances that were and they knew she was one of the prime suspects in this ring, but passed it on, overlooked it. Don't you think that's a little odd? So again, I think for the reasons that Ms. Benson explained that distinguished Ms. David's conduct from Mr. Bredesante, yes, they were flagged because the impersonator was the same person. Yeah, but your client knew or had strong reason to suspect that Ms. Kip was a crook. So this... Right? Correct, Your Honor. That's right. But they didn't have evidence to suggest that Ms. David's actions were part of the ring, that she had any criminal intent, that anything that she... I agree they may not have risen to the level of Mr. Bredesante, but they were nevertheless irregular, conspicuously irregular. Your Honor, one other point that I'd like to point out too is that Ms. David... Well, would you agree with that? I... Not necessarily, and here's why. Ms. David did not key in the cardholder's credit card number as Mr. Bredesante did. She obtained a temporary credit card number and keyed that in. That to me too is a material difference, right? Because it wasn't perpetrating a fraud on the cardholder. They obtained a temporary... She obtained a temporary credit card number. And if you look at JA353, which shows Ms. David's receipt or the receipt that she rung up, you will see it says temp CRA, temp credit card, versus Mr. Bredesante and the others in the ring who obtained Maureen Hennessy's actual credit card number, and that's what they keyed in. That was the fraud, and that... Yeah, but when you step back, your explanation really doesn't make a great deal of sense, because the most conspicuous, most important bit of information facing your client was that here was another transaction that was irregular involving someone who Sachs believed was at the center of this ring, or at least a prominent participant in stealing large sums of... Attempting to steal large sums of money from Sachs. So I don't understand why that fact, when you see the perpetrator walk back into your store, wouldn't have made all your red lights go off. Yeah, and look, and Your Honor, I think that, again, Ms. Benson was looking at all the totality of the circumstances and the distinguishing features here, and who is she going to pass along to the authorities as being a part of this ring? She did not see any irregularities with Ms. David's transaction. Ms. David followed the rules. Mr. Bright-Asante and the others did not follow the rules. And so for that reason, and Your Honor, there is no evidence that race at all played any role in her decision at all. So I don't know how... The law does not permit us to second guess. If there is an impermissible reason that is in the mix here, that's different. But there's nothing in this record that shows that her decision to distinguish this transaction wasn't based on these factors that clearly showed that Ms. David was following the rules of Sachs, doing everything she was supposed to do, did not key in the true cardholder's number, obtained a temporary number, and therefore was not a suspect that should be referred to the authorities. No question it was a questionable transaction because of the impersonator that was there. But beyond that, her actions, Ms. David's actions were materially different. Ms. Johnson-Larry, I want to ask you a quick question. You make the argument in your brief that we do not have jurisdiction to review the dismissal of the arbitration-related claim. And I was puzzled by that because my reading of the record was that there was no final judgment entered in this case until this final decision on summary judgment with regard to the discrimination claims. Doesn't that judgment, doesn't the order that you're claiming we don't have jurisdiction to review, didn't that merge into the judgment even though the notice of appeal didn't mention it specifically? Don't we have jurisdiction to look at that? So I guess there are two issues there, Your Honor, with your question. One, was that a final determination? And two, the other part of our issue on jurisdiction was... No, I didn't ask whether it was a final determination. I asked whether a final judgment had been entered such that we could review it. I understand that the district court had ruled definitively, but hadn't entered a judgment with regard to the arbitration claim. Isn't that right? That is correct, Your Honor, understood. I think our understanding of federal rule of appellate procedure 3C1 said that you have to designate and identify what you are appealing in your notice of appeal. Mr. Bredesante's appeal did not identify that order in any respect in the notice, and that that is jurisdictional, according to Gonzalez v. Thaler, 565 U.S. 134, 2012 case by the Supreme Court. That was the other aspect of our jurisdictional argument. But you agree that there was no final judgment before this final judgment, isn't that correct? I do, Your Honor, correct. All right, thank you. And of course, substantively as well, the district court's decision on that was fully supported by the record. And the challenges that Mr. Bredesante made to the arbitration award predicated on Ms. Ricard's testimony are just not true. That just didn't happen. All right, fine. I think we have the arguments. Thank you both. We'll reserve decision. Thank you, Your Honor. Thank you.